(No. 17658.—Judgment affirmed.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSEPH LABODA, Plaintiff in Error.

*Opinion filed December 23, 1926.*

CRIMINAL LAW—*when evidence offered for impeachment is properly refused.* Testimony to impeach the complaining witness in a prosecution for the confidence game is properly refused where it does not contradict any statement of said witness but pertains to matter testified to by another witness.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. EMANUEL ELLER, Judge, presiding.

SAMUEL WODIKA, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and MERRILL F. WEHMHOFF, (EDWARD E. WILSON, and CLARENCE E. NELSON, of counsel,) for the People.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

Plaintiff in error, Joseph Laboda, also known as Frank Larbara, was convicted in the criminal court of Cook county of the crime of fraudulently procuring the sum of $2100 from William Lightning by means of the confidence game, and he brings the cause here for review.

Numerous errors are assigned, of which plaintiff in error argues the following: That the court erred in its rulings on the admission of evidence; that the evidence

is at variance with the allegations of the indictment and does not support the verdict of the jury.

It appears that both plaintiff in error and the prosecuting witness were living in an apartment building at 840 Sedgwick street, in the city of Chicago. There were numerous other tenants living in this building, all of whom paid their rent to Laboda. Lightning moved into this apartment in April, 1924, and paid a month's rent to Laboda, who was known to him as Frank Laboda. The testimony of the witnesses for the State tends to show that Lightning asked Laboda whether a vacant lot north of the apartment building was for sale, and Laboda asked him whether he intended to buy that lot, and he replied that he did, whereupon Laboda said, "I have been trying to sell this place; I will sell this place to you." He further stated that if Lightning would make a pretty good down-payment he would give him four or five years to finish paying for the property, and that at that time he was receiving a total of $275 per month in rentals from tenants of the building. The State's testimony tends to show that on the next morning Lightning took the sum of $2100 from his "bed-tick" and went to Laboda's apartment, where it was agreed that he should pay that sum in cash and that an additional sum of $3500 was to be paid in four years. The State's evidence further is that Laboda stated to Lightning that the taxes on the property for the preceding year had been paid and that the property was clear and had no mortgage on it. It was agreed that Laboda should move from the premises. Laboda did not own the property and had no interest in it. It belonged to his son, Frank. Lightning did not engage an attorney to examine the matter for him but took Laboda's word for the entire transaction. Lightning paid the sum of $2100 in currency and received a receipt signed by Laboda. It appears from the examination of the complaining witness in this record that he is an ignorant, illiterate colored man, who is unable to read or write. According

to the testimony of the witnesses for the State, Laboda at first gave Lightning a receipt signed by himself showing payment of the sum of $2100, with a conditon that if the balance of $3500 was not paid within four years the property was to go back to Laboda. Three witnesses for the State testify to having seen this receipt. They also testify that Laboda told Lightning that it would be better to have the receipt typewritten, because then it would not fade out, and that he would take the receipt down-town, have it typewritten and give it to him in exchange for the one which Lightning held. Lightning appears to have agreed to this, and People's "Exhibit 1" was identified and admitted in evidence. It is wholly typewritten, and is as follows:

"Received from Will Lightning $2100.          *"June 1, 1924.*

FRANK LARBARA."

On the back was typed:

"This is paid in cash from Will Lightning on property at 840 Sedgwick street, $2000 down and $3500 balance due to be paid in four years; if not, the property falls back to said owner, Frank Larbara."

The testimony of the complaining witness concerning the transaction is corroborated by that of his wife, Louise, and his sister, Lina Ware, both of whom testified that they were present when Lightning paid Laboda the sum of $2100 and received his receipt therefor; that it was paid on the purchase price of the property at 840 Sedgwick street, and that later Laboda exchanged for the written receipt the typewritten one admitted in evidence.

Edward J. Dodd, deputy State fire marshal, was called as a witness for the State, and testified that shortly following a fire in the premises he met both Lightning and Laboda there; that Lightning told the witness, in the presence of Laboda, that he owned the premises; that he paid Laboda $2100 down and that the agreement called for $3500 to be paid later; that the witness asked to see the contract of sale, and Lightning produced the receipt introduced as

"Exhibit 1;" that when Lightning stated that he was the owner of the property the witness asked Laboda whether that was true, and he said that it was. It appears that the complaining witness was allowed to collect the rent for some two or three months thereafter, when he was served with a summons in an action in forcible detainer on the part of Laboda, acting as agent for Frank Laboda, his son. It is conceded that Frank Laboda was the owner of the property. Several of the tenants in the building testified that the defendant told them that Lightning was their new landlord from that time on and that they were to pay the rent to him.

The defendant testified that he at no time received $2100, or any like sum, from the complaining witness. He and his daughter both testified that on the first day of June, 1924, instead of receiving money from Lightning the latter called and borrowed three dollars, and that at a later date he came to Laboda's apartment and asked for and received a blank receipt-form similar to that in "Exhibit 1." Laboda testified that while Lightning collected some rents from the tenants, he was not authorized to do so but claimed that he did it to help him, Laboda.

The defendant was proved guilty beyond all reasonable doubt and the jury were justified in so finding. It is clearly established that he took advantage of this illiterate colored man, who relied upon his representations, and defrauded him out of the sum of $2100. Count 1 of the indictment charged him with so defrauding the complaining witness, Lightning, and conviction was had on this count. There is no variance between the proof and the indictment.

Concerning the errors in the admission of evidence, it is argued, first, that the court erred in refusing to permit plaintiff in error to prove by a representative of the Salvation Army certain facts pertaining to the sale of old clothing by that organization. In no place in the record does the competency of such testimony appear. One of the wit-

nesses stated that Lightning had said that he had procured money from the sale of old clothes, which he bought of the Salvation Army. No such statement appears in the testimony of Lightning. When asked where he got the money which he paid to Laboda, he stated that he had worked for it and saved it; that he is a painter and decorator and that he had owned property in Arkansas. The only purpose of the evidence concerning the sale of old clothing by the Salvation Army was to impeach the testimony of the complaining witness, and since his testimony does not contain the statement sought to be impeached or a denial of the evidence in the record pertaining to the sale of clothing, the evidence was clearly incompetent and the court did not err in excluding it.

It was also urged that proper foundation was not laid for the introduction of a photostatic copy of the record of a quit-claim deed from Frank Laboda, the owner of the property, to Agnieszka Laboda. As it appears both by stipulation in the record and the statement of plaintiff in error on the witness stand that the property belonged to Frank Laboda, the introduction in evidence of this copy of the deed of Frank Laboda could work no harm to plaintiff in error, and the sufficiency of the identification of that instrument need not be here discussed.

Other errors in the admission of testimony are claimed and argued, but the arguments presented by counsel evince a want of familiarity with the rules of evidence, and an examination of the record shows no error on the part of the court in this regard. We would not, therefore, be justified in extending this opinion by a discussion of them.

There is no reversible error in the record. Plaintiff in error had a fair trial and was convicted by overwhelming proof.

The judgment will be affirmed.     *Judgment affirmed.*